UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 24cv975

| | |
|---|---|
| JAMES CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>CABARRUS COUNTY BOARD OF COMMISSIONERS; *and* STEVE MORRIS, *in his official capacity as Board Chairman*,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff James Campbell is one of many Cabarrus County residents who have petitioned the Cabarrus County Board of Commissioners (the "Board") to look into reported problems in the County.

2. During the public comment period of a Board meeting, Mr. Campbell spoke—and, in doing so, stated a name of a public official. The Board then ordered that Mr. Campbell be removed from the meeting—under a policy that supposedly prohibited the use of public officials' names in comments at Board meetings.

3.     Mr. Campbell asked to see a copy of the Public Participation Policy for public comment ("the Policy") that prohibited the use of names, but neither the Board, its clerk, nor the County Attorney provided one.

4.     Mr. Campbell replied that he would continue to exercise his First Amendment rights unless and until he received a copy of the policy—and several deputies then escorted him out of the meeting.

5.     The Board then banned Mr. Campbell from attending any of its meetings for 90 days.

6.     The Board's Policy against naming names, and its banishment of Mr. Campbell from Board meetings for doing so, violate the First Amendment rights to speak freely and petition one's government. Mr. Campbell brings this lawsuit to vindicate these rights.

## PARTIES

7.     Plaintiff James Campbell is a husband and father who lives in Cabarrus County, North Carolina.

8.     Defendant Cabarrus County Board of Commissioners is a political subdivision of the State of North Carolina comprised of five members elected in countywide elections. It is responsible for establishing and enforcing policies relating to public comment at its own meetings. The Board

is located at 65 Church Street S, Concord, North Carolina 28025 and may be served with process by serving its Chairperson, Steve Morris.

9. Defendant Steve Morris is the Chairman of the Board. Mr. Morris is being sued in his official capacity as Board Chair. He may be served with process at 65 Church Street S, Concord, North Carolina 28025.

## JURISDICTION AND VENUE

10. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. This case raises federal claims arising under 42 U.S.C. § 1983 and the First Amendment of the U.S. Constitution. Plaintiff's claims for declaratory and injunctive relief are pursuant to 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court.

11. Venue is appropriate under 28 U.S.C. § 1391(b) because Defendants' Board meetings are held in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

12. Mr. Campbell began attending Board meetings in December 2023. He addressed the Board for the first time during the public comment period of a January 2024 meeting.

13. At the Board meeting held on March 18, 2024, Mr. Campbell spoke during the public comment period. During his comment, Mr. Campbell named seven individuals—six county officials, contractors, or employees, and one sitting judge—in the context of questioning corruption allegedly occurring within the county.

14. Multiple speakers also used the names of state and county officials and employees in a critical manner at this March 2024 meeting.

15. Mr. Campbell attended the next Regular Session Board meeting on April 15, 2024. The meeting included a presentation of the Child Protection and Fatality Team Report. At the end of that segment, Vice-Chairman Lynn Shue addressed "Paula" and publicly praised her.[1]

16. Next, the Board began an informal public comment period.

17. The first person who spoke during that period began using the names of public officials. Commissioner Kenneth Wortman interrupted and stated, "We're not supposed to be naming names, are we not?" The speaker continued his speech and continued to use names of county employees. When the speaker finished, Commissioner Wortman said: "Chairman Morris, according to our policy we are not supposed to be namin' names, and, and,

---

[1] A YouTube video of this meeting is available at this link: https://dub.sh/ZQSqZty.

we've had this discussion multiple times. And so I'm gonna ask you to do something about it as the Chairman of the Board."

18. Chairman Steve Morris responded:

> Um, You are correct. We, our policy states that names for County employees are not to be named. You have repeatedly disregarded those rules. We've discussed 'em many times. If it happens again, we will ask the Deputy to remove you from the chambers and you will be banned from public comments for 90 days. If you follow the rules then you will be fine, but you have to follow the rules.

19. Chairman Morris then turned toward Commissioner Wortman and the others on his left and said, "Is that appropriate?" He then turned to his right and asked, "Commissioners?" None of the commissioners responded.

20. When it was Mr. Campbell's turn to speak, he began to use the names of county officials. Commissioner Wortman interrupted Mr. Campbell and told him that the Board has a policy against naming county employees' names.

21. Mr. Campbell then asked for a copy of the Policy: "I am requesting a copy today." Chairman Morris said the Board could "easily" give him a copy of the Policy, and that Mr. Campbell could continue his comments but not say the names of County employees. No action was taken, however, to actually give Mr. Campbell a copy of the Policy. Mr. Campbell stated that

until he received a copy of the Policy, he would continue to say people's names.

22. Chairman Morris, again without giving Mr. Campbell the Policy, stated, "Ok, then I'm going to ask you to leave the chambers and so you can read that policy." Mr. Campbell clarified, "So you want me to leave my constitutional right to speak? You want me to leave?" Chairman Morris confirmed, "Yes, sir."

23. Directly following this, deputies approached Mr. Campbell on his right and left and began escorting him out of the room. Mr. Campbell walked calmly with them.

24. Mr. Campbell never received a copy of the Policy.

25. The Board added a "Public Participation Page" to its website on May 15, 2022.[2]

26. That page included the following "guidelines" for speakers at Board meetings:

    (a) "Speakers must be respectful and observe proper decorum in their statements by refraining from vulgarity, obscenities,

---

[2] *See* Cabarrus County, *Public Participation Policy*, https://dub.sh/voha9oD (May 15, 2022).

profanity, and speaking in a tone or manner that threatens disruption or other breaches of respect."

(b) "Speakers may not personally attack Board members, County employees or members of the public. Speakers are free to discuss substantive concerns of public interest regarding a public official's conduct or qualifications, but irrelevant insults and attacks are not allowed."

(c) "Speakers may not disclose personally identifiable information about minors, such as names, birthdays, addresses or pictures, without permission from the minor's parent or legal guardian."

(d) "Speakers must register with the Clerk by filling out a yellow card before speaking. Speakers usually have up to three minutes."

27. It is not apparent, however, that these Guidelines constitute the Board's entire policy because the webpage also states: "You can get a full copy of this policy from the Clerk to the Board of Commissioners."

28. Lauren Linker, Clerk to the Board of Commissioners, was present at the April 2024 Board meeting, but did not give Mr. Campbell a copy of the Policy when he requested it.

29. Mr. Campbell made an official records request to get a copy of the Policy.

30. On May 17, 2024, Ms. Linker emailed Mr. Campbell in response to his records request. Ms. Linker provided the Rules of Procedure for the Cabarrus County Board of Commissioners, but not the Public Participation Policy itself. The document Ms. Linker sent to Mr. Campbell is the document that authorizes the Board to develop and implement a public participation policy, but it does not contain the public participation policy itself.

31. Mr. Campbell did not attend the following three Board meetings, with the understanding that he was banned for 90 days, as ordered by Mr. Morris during the April meeting.

32. But for the Board's Policy and prohibition on naming names, Mr. Campbell would attend future Board meetings to exercise his rights under the free speech and petition clauses of the First Amendment, and he would continue to name names in a respectful and professional manner.

## CLAIMS FOR RELIEF

### COUNT ONE

**The Board's policy against naming government employees' names and its exclusion of Plaintiff based on that policy violate the First Amendment right to freedom of speech.**

33. Plaintiff incorporates the preceding paragraphs by reference.

34. "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). Indeed, such regulations of speech inhibit the "free flow of ideas and opinions on matters of public interest and concern" that lies at "the heart of the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988).

35. Defendants' policy forbidding the mention of county employees discriminates on the basis of content.

36. This prohibition cannot satisfy any level of First Amendment scrutiny: it is not narrowly tailored to serve a compelling or important governmental interest, nor does it serve any legitimate governmental interest at all. To the contrary, the protection of government employees from criticism is an illegitimate purpose.

37. The policy therefore violates the First Amendment rights to free speech, both on its face and as applied to Mr. Campbell as set forth above.

38. By enforcing the Policy, Defendants, under color of state law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution and thus cause him irreparable harm.

39. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is entitled to damages, including nominal damages, as well as declaratory relief and preliminary and permanent injunctive relief against continued enforcement of the Policy, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT TWO

**The Board's policy against naming government employees' names and its exclusion of Plaintiff based on that policy violate the First Amendment right to petition.**

40. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

41. "The Supreme Court has described the right to petition as among the most precious of the liberties safeguarded by the Bill of Rights and intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. It is cut from the same cloth as the other guarantees of the First Amendment, and is an assurance of a

particular freedom of expression." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (cleaned up).

42. County commission board meetings with public comment periods constitute a forum that enable the public to petition government officials in accordance with their First Amendment rights.

43. The Policy's prohibition on mentioning county employees by name therefore violates the First Amendment right to petition their government for redress of grievances.

44. This prohibition cannot satisfy any level of First Amendment scrutiny: it is not narrowly tailored to serve a compelling or important governmental interest, nor does it serve any legitimate governmental interest at all. To the contrary, the protection of government employees from criticism is an illegitimate purpose.

45. The policy therefore violates the First Amendment rights to petition, both on its face and as applied to Mr. Campbell as set forth above.

46. By enforcing the Policy, Defendants, under color of state law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution and thus cause him irreparable harm.

47. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, as well as declaratory relief and preliminary and permanent injunctive relief against continued enforcement of the Policy, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT THREE

**The Board's exclusion of Plaintiff from its meetings violates his First Amendment Rights to Freedom of Speech and to Petition his government.**

48. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

49. The public has a right to access county commission board meetings on an equal basis to petition their elected and appointed officials, without regard to the viewpoints that they might express during the meetings. The Board must allocate meeting access in a manner that is neutral with respect to people's viewpoints.

50. Defendants violated Plaintiff's First Amendment rights when they banned Plaintiff from attending Board meetings for 90 days. A government agency may not preemptively ban members of the public from attending public meetings. Public comment within local government is essential to the betterment of local governments. The First Amendment

protects this vital right of the people to publicly voice their concerns and prohibits governing boards from censoring speech they disagree with or would rather not hear.

51. The statement by Chairman Morris that anyone who named names would be banned from meetings for 90 days, violates Plaintiff's First Amendment right to free speech and is unconstitutional prior restraint. Prior restraint is "a regulation of expression aimed at suppressing speech before it is uttered" and "bear[s] a heavy presumption of unconstitutionality." *Burch v. Barker*, 861 F.2d 1149, 1154 (9th Cir. 1988) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

52. By preemptively prohibiting Plaintiff from attending Board meetings, Defendants, under color of state law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

53. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, declaratory relief, and preliminary and permanent injunctive relief against future enforcement of the ban on attendance, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

# PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1. Submit all issues to a trial by jury, for all issues so triable;

2. Enter a preliminary and permanent injunction enjoining Defendants from enforcing the Policy's prohibition on mentioning names of County employees at future Board meetings;

3. Declare that the Board's Policy violates the First Amendment rights to freedom of speech and freedom to petition, both on their face and as applied to Plaintiff;

4. Declare that the Defendants' action of banning Plaintiff from attending Board meetings for 90 days violated his First Amendment Right to freedom of speech and right of access;

5. Award Plaintiff nominal damages for Defendants' violations of his First Amendment rights;

6. Award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law; and

7. Grant any other relief the Court deems just and proper.

Dated: November 21, 2024

/s/ Troy D. Shelton
Troy D. Shelton
N.C. State Bar No. 48070
tshelton@dowlingfirm.com
DOWLING PLLC
3801 Lake Boone Trail, Suite 260

Raleigh, North Carolina 27607
Telephone: (919) 529-3351

M.E. Buck Dougherty III *
Noelle Daniel*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(312) 637-2280 - telephone
bdougherty@libertyjusticecenter.org
ndaniel@libertyjusticecenter.org

*Pro hac vice admission forthcoming*

*Counsel for Plaintiff*