IN THE UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:24-CV-975

JAMES CAMPBELL,

    Plaintiff,

v.

CABARRUS COUNTY BOARD OF COMMISSIONS; AND STEVE MORRIS, IN HIS OFFICIAL CAPACITY AS BOARD CHAIRMAN,

    Defendants

**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COME Defendants, Cabarrus County Board of Commissioners and Steve Morris, in his official capacity as Board Chairman ("Defendants"), by and through the undersigned counsel, and respectfully submit this Brief in support of their Motion to Dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiff, James Campbell ("Mr. Campbell"), alleges that the Public Participation Policy (the "Policy") of the Cabarrus County Board of Commissioners (the "Board") violated his First Amendment rights. As the Policy prohibits "personal, *ad hominem* attacks toward board members, county employees or members of the public" so that the meeting can by conducted in an orderly

1

manner, the Policy is constitutional and reasonable efforts to enforce the Policy are permitted.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Campbell, a resident of Cabarrus County, began attending meetings of the Board in December 2023. *See* Complaint at ¶¶ 1 & 12. Mr. Campbell addressed the Board during multiple public meetings. *See id.* at ¶¶ 12, 13 & 15.

Mr. Campbell attended the April 15, 2024 meeting of the Board (the "Meeting"). *See id.* at ¶ 15. The first speaker during the public comment period at the Meeting was warned of the Policy, which prohibited attacking County employees by name, and that if the speaker continued to violate the Policy, the speaker would be removed. *See id.* at ¶¶ 17-18.

When it was Mr. Campbell's turn to speak, he called a Department of Social Services employee "corrupt." *See id.* at Footnote 1.[1] He was warned that his comments were in violation of the Policy. *See id.* at ¶ 20. Mr. Campbell requested a copy of the Policy, which the Board indicated it would provide. *See id.* at ¶ 21 and Footnote 1. The Board indicated that if Mr. Campbell continued with his comments, he would have to abide by the Policy. *See id.* Mr. Campbell indicated that until he saw a copy of the Policy, he intended to continue to call out the names

---

[1] The comments of, and to, Mr. Campbell begin at the 1:31:27 mark of the YouTube link cited in footnote 1 of the Complaint. Citations to, and review of, the video linked in the Complaint does not convert the motion from a Rule 12 motion to a Rule 56 motion as the Complaint expressly references the video, which is central to Plaintiff's claims. *See Williams v. Chase Manhattan Mortgage Corp.*, 2005 U.S. Dist. LEXIS 45605 at *15-17 (W.D.N.C. 2005).

2

of employees. *See id*. Mr. Campbell was then advised he would need to leave the chamber to review the Policy and was escorted out. *See id*. at ¶ 22 and footnote 1.

After Mr. Campbell left the hearing, he claims he had the "understanding" that he was banned for 90 days from attending Board meetings, though the Complaint fails to allege that anyone actually communicated to Mr. Campbell that he was banned. *See id*. at ¶ 31.

Mr. Campbell acknowledges that since at least May 15, 2022, Cabarrus County has had guidelines on its website that state, in part, "[s]peakers may not personally attack Board members, County employees or members of the public. Speakers are free to discuss substantive concerns of public interest regarding a public official's conduct or qualifications, but irrelevant insults and attacks are not allowed." *See id*. at ¶¶ 25-26. As Mr. Campbell notes, these guidelines are not a complete recitation of the Policy, which is available from the Board. *See id*. at ¶ 27.

The full Public Participation Policy provides:

> ….This Public Participation Policy is intended to ensure that such meetings are conducted with fairness to all.
>
> **I.     Maintenance of Order and Decorum**
>
> Members of the public must maintain the civility, decorum and respect for the functioning and dignity of the Board of Commissioners. Speakers must be respectful and observe proper decorum in their statements by refraining from vulgarity, obscenities,

3

profanity, speaking in a tone or manner that threatens disruption, or other like breaches of respect.

As part of this requirement, speakers may not utter personal, *ad hominem* attacks toward board members, county employees or members of the public. Directing insults at individuals, rather than discussing substantive concerns of public interest regarding a person's conduct or qualifications, threatens the dignity and good order of meetings. Such comments are likely irrelevant and almost inevitably lead to a responsive defense or counterattack and thus to argumentation that has the real potential to disrupt the orderly conduct of the meeting.

…

## VI. Viewpoint Neutrality

This Policy is intended to establish reasonable time, place, and manner restrictions in accordance with state and federal law. It shall not be construed or applied so as to discriminate against a speaker based on the substantive content of their speech.

## VII. Enforcement

The Presiding Officer is responsible for enforcement of this policy. The Presiding Officer may do so, where appropriate, by warning a person that they are violating this policy, temporarily prohibiting the person from presenting to the Board, or directing the person to leave a meeting. The Presiding Officer may request the assistance of law enforcement officers to enforce this policy.

…

## VIII. Authority

> This policy is authorized under N.C.G.S. 153A-52 and 153A-52.1, which authorize the Board of Commissioners to adopt reasonable rules governing the conduct of public comment periods and public hearings
>
> **ADOPTED** this 2nd day of May, 2022

*See* Policy, attached hereto as Exhibit "A."[2]

Mr. Campbell alleges that the Policy is a violation of his First Amendment rights to freedom of speech and to petition. *See* Complaint at ¶¶ 33-47. Further, Mr. Campbell alleges that the exclusion of Plaintiff from the Board meetings violates his First Amendment rights to freedom of speech and to petition his government. *See id.* at ¶¶ 48-53.

## STATEMENT OF QUESTIONS PRESENTED

1. Does the Policy violate Mr. Campbell's First Amendment rights?

2. Did the Board ban Mr. Campbell from exercising his First Amendment rights?

## LEGAL ARGUMENT

Mr. Campbell's First Amendment rights were not violated as the Policy, which precludes "personal, *ad hominem* attacks toward…county employees…" is a viewpoint neutral policy which serves a legitimate public interest. Moreover, Mr. Campbell was not banned from speaking at public meetings before the Board.

---

[2] Citations to, and review of, the policy does not convert the motion from a Rule 12 motion to a Rule 56 motion as the Complaint expressly and frequently references the policy, which is central to Plaintiff's claims. *See Williams*, 2005 U.S. Dist. LEXIS 45605 at *15-17.

### A. The Board Did Not Violate Mr. Campbell's First Amendment Right to Freedom of Speech or to Petition.

First Amendment claims like these proceed in three steps. First, the Court determines whether the speech was protected by the First Amendment. Second, the Court must identify the nature of the forum in which the speaker spoke. Third, the Court must ask whether the justifications for exclusions from the relevant forum satisfy the requisite standard. *See Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021) *quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

"The standards that we apply to determine whether a State has unconstitutionally excluded a private speaker from use of a public forum depend on the nature of the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). Government entities may create a limited public forum in a specified location for a limited use, so long as they do not impose those limits in a manner that discriminates based on the speaker's viewpoint." *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 384-385 (4th Cir. 2008).

Board meetings are a limited forum. *See id.* at 385; *Davison*, 19 F.4th at 635. "[W]hen the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified 'in reserving its forum for certain groups or for the discussion of certain

topics.'" *Good News*, 533 U.S. at 106 *quoting Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

In *Davison*, the plaintiff's speech was limited during meetings of the Loudoun County School Board ("LCSB"). *See* 19 F. 4th at 634-635. The LCSB had a policy that did not allow comments that are harassing or amount to a personal attack against any identifiable individual. *See id.* at 635. The rationale for the policy was to maximize citizen participation and allow the Board to transact public business in an orderly, effective, efficient and dignified manner. *See id.* Thus, personal attacks were prohibited because they had the potential for causing unnecessary delay or disruption. *See id.*

The Fourth Circuit upheld LCSB's policy against personal attack "as necessary to further the forum's purpose of conducting good business." *See id. quoting Steinburg*, 527 F.3d at 387. The Court held the policy is constitutional because it is viewpoint neutral, and the restriction is reasonable in light of the purpose of LCSB.

Similarly, in *Steinburg*, upon which *Davison* was based, the plaintiff was removed from a meeting of the Chesterfield County Planning Commission. *See* 527 F.3d at 383. He filed a lawsuit challenging the constitutionality of a policy that prohibited personal attacks. *See id.* at 384. The Fourth Circuit noted the commission had a significant interest in maintaining civility and decorum during

7

the public comment sessions of its public meetings, which was sufficient to adopt a policy against personal attacks. *See id.* at 387. Ultimately, the Court concluded that a policy against personal attacks is not unconstitutional. *See id.*

Here, like in *Davison* and *Steinburg*, the Board has a policy that prohibits "personal, *ad hominem* attacks toward board members, county employees or members of the public." Further, the stated basis for that policy is that "[d]irecting insults at individuals, rather than discussing substantive concerns of public interest regarding a person's conduct or qualifications, threatens the dignity and good order of meetings. Such comments are likely irrelevant and almost inevitably lead to a responsive defense or counterattack and thus to argumentation that has the real potential to disrupt the orderly conduct of the meeting." Thus, the Board enacted a viewpoint neutral policy that prevented personal attacks, which is, and has been determined to be, constitutional.

Mr. Campbell has been afforded the opportunity to speak at multiple meetings before the Board. At the Meeting, he was interrupted only when he began personally attacking a county employee by name. He then indicated he would refuse to abide by the Policy. Put simply, Mr. Campbell's First Amendment rights were not violated as the Policy is constitutional.

### B. The Board Did Not Ban Mr. Campbell.

Mr. Campbell acknowledges that he spoke at several Board meetings. It

8

Case 1:24-cv-00975-WO-JLW     Document 8     Filed 01/23/25     Page 8 of 12

should be undisputed that Mr. Campbell was permitted to speak at the Meeting and was not interrupted until he began personally attacking a county employee by name. Even at that point, Mr. Campbell was not removed. It was only when he indicated that he would not abide by the Policy and would continue to attack individuals by name that he was asked to leave. Moreover, he was asked to leave only so that he could review the Policy, which he requested to see.

There is nothing in the Complaint to validate Mr. Campbell's claim that he was banned from meetings before the Board. While the remedy of "temporarily prohibiting the person from presenting to the Board" is provided for in the Policy and was raised by the Board to another speaker, Mr. Campbell does not allege, and there is no evidence to support, that he was, in fact, banned.

Moreover, even if he were banned, it would be entirely appropriate to temporarily ban him for violations of the Policy if he persisted in refusing to comply with the constitutional Policy. Accordingly, Mr. Campbell does not have a legal cause of action arising from any alleged ban.

## **CONCLUSION**

For the above stated reasons, Defendants respectfully request that the Court dismiss with prejudice any and all claims asserted against them.

9

This the 23rd day of January, 2025.

/s/ JAMES D. MCALISTER
Bar No: 35432
McAngus Goudelock & Courie
Post Office Box 30307
Charlotte, North Carolina 28230
Phone: (704) 405-4638
Fax: (704) 643-2376
Email: jmcalister@mgclaw.com

Attorney for Cabarrus County Board of Commissioners and Steve Morris, in his official capacity as Board Chairman

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.3(d)(1), counsel for Defendants certifies that the foregoing Brief does not exceed 6,250 words (excluding caption, signature lines, Certificate of Compliance, and Certificate of Service) in compliance with the Rule LR 7.3(d)(1).

This the 23rd day of January, 2025.

/s/JAMES D. MCALISTER

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    Email: bdougherty@libertyjusticecenter.org
    M.E. Buck Dougherty
    Liberty Justice Center
    7500 Rialto Boulevard, Suite 1-250
    Austin, Texas 78735
    Attorney for James Campbell

    Email: tshelton@dowlingfirm.com
    Troy D. Shelton
    Dowling PLLC
    3801 Lake Boone Trail, Suite 260
    Raleigh, North Carolina 27607
    Attorney for James Campbell

                                              /s/ JAMES D. MCALISTER