UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION No. 1:24-CV-975

| | |
|---|---|
| JAMES CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>CABARRUS COUNTY BOARD OF COMMISSIONERS; *and* STEVE MORRIS, *in his official capacity as Board Chairman*,<br><br>Defendants. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff James Campbell responds to the Defendants' Motion to Dismiss, ECF No. 7. As set forth below, the Court should deny Defendants' Motion.

Mr. Campbell is one of many Cabarrus County residents who have petitioned the Cabarrus County Board of Commissioners (the Board) at public meetings to review reported problems in the County. But during the public comment period of a Board meeting, Mr. Campbell spoke—and, in doing so, accurately stated the name of a public official. The Board then ordered that Mr. Campbell be removed from the meeting—under a policy that supposedly prohibited the public from using officials' names in their comments at Board meetings.

Mr. Campbell asked to see a copy of this so-called Public Participation Policy for public comment that prohibited the use of names ("the Policy"), but neither the Board, its

clerk, nor the County Attorney provided one. The Board then ordered law enforcement to escort Mr. Campbell out of the Board meeting and banned him from attending any of its public meetings for 90 days.

The Board's Policy against naming names, and its banishment of Mr. Campbell from public Board meetings for doing so, violate his First Amendment rights to speak freely and petition one's government. And thus, Defendants' Motion is unavailing, and they are wrong on at least two counts: (1) A limited public forum does *not* give the government such as the Board free reign to censor speech without providing a workable standard, and (2) The Board *did* prohibit Mr. Campbell from public comment for 90 days, and such a ban is an unconstitutional prior restraint.

## FACTUAL BACKGROUND

All the factual allegations contained within Plaintiff's Complaint are incorporated in this response as if fully restated. *See* Complaint, ECF No. 1.

### *Meetings of the Cabarrus County Board of Commissioners*

Mr. Campbell began attending Cabarrus County Board of Commissioners meetings in December 2023. ECF No. 1 at ¶ 12. He addressed the Board for the first time during the public comment period of a January 2024 meeting. *Id.*

At the Board meeting held on March 18, 2024, Mr. Campbell spoke during the public comment period. *Id.* at ¶ 13. During his comment, Mr. Campbell named seven individuals who worked for the county in the context of questioning corruption allegedly occurring within the county. *Id.* Multiple speakers also used the names of state and

2

county officials and employees in a critical manner at this March 2024 meeting. *Id.* at ¶ 14.

### *Mr. Campbell Is Removed for Naming Names*

Mr. Campbell attended the next Regular Session Board meeting on April 15, 2024. *Id.* at ¶ 15. The meeting included a presentation of the Child Protection and Fatality Team Report. At the end of that segment, Vice-Chairman Lynn Shue addressed "Paula" and publicly praised her. *Id.* Then the Board began informal public comments. *Id.* at ¶ 16.

The first person who spoke during that period began using the names of public officials. *Id.* at ¶ 17. Commissioner Kenneth Wortman interrupted and stated, "We're not supposed to be naming names, are we not?" *Id.* The speaker continued his speech and continued to use names of county employees. *Id.* When the speaker finished, Commissioner Wortman said: "Chairman Morris, according to our policy we are not supposed to be namin' names, and, and we've had this discussion multiple times. And so I'm gonna ask you to do something about it as the Chairman of the Board." *Id.* Chairman Morris then confirmed that the policy did not allow the naming of County employees during public comment, stating: "We, our policy states that names for County employees are not to be named. You have repeatedly disregarded those rules. We've discussed 'em many times." *Id.* at ¶ 18. He continued: "If it happens again, we will ask the Deputy to remove you from the chambers and you will be banned from public comments for 90 days." *Id.* He then turned to his fellow commissioners and asked, "Is that appropriate?" *Id.* at ¶ 19. But none of them responded. *Id.*

3

It was then Mr. Campbell's turn to speak. *Id.* at ¶ 20. When he began to use the names of county officials, Commissioner Wortman interrupted Mr. Campbell and told him that the Board has a policy against naming county employees' names. *Id.* At that time, Mr. Campbell asked for a copy of the Policy, saying, "I am requesting a copy today." *Id.* at ¶ 21. Chairman Morris said the Board could "easily" give him a copy of the Policy, and that Mr. Campbell could continue his comments but not say the names of County employees. *Id.* But no action was taken to actually give Mr. Campbell a copy of the Policy. *Id.* Mr. Campbell stated that until he received a copy of the Policy, he would continue to say people's names. *Id.*

Chairman Morris, again without giving Mr. Campbell the Policy, stated, "Ok, then I'm going to ask you to leave the chambers and so you can read that policy." *Id.* at ¶ 22. Mr. Campbell clarified, "So you want me to leave my constitutional right to speak? You want me to leave?" *Id.* Chairman Morris confirmed, "Yes, sir." *Id.* Directly following this, deputies approached Mr. Campbell on his right and left and began escorting him out of the room. *Id.* at ¶ 23. Mr. Campbell walked calmly with them. *Id.*

Even after his repeated requests, Mr. Campbell never received a copy of the Policy. *Id.* at ¶ 24. With the understanding that he was banned for 90 days, as ordered by Chairman Morris during the April meeting, Mr. Campbell did not attend the following three Board meetings. *Id.* at ¶ 31.

### *Mr. Campbell's Records Request*

Later, Mr. Campbell made an official public records request to get a copy of the Policy. *Id.* at ¶ 29. On May 17, 2024, Lauren Linker, Clerk to the Board of Commissioners, emailed Mr. Campbell in response to his records request. *Id.* at ¶¶ 28, 30. Ms. Linker provided the Rules of Procedure for the Cabarrus County Board of Commissioners, but not the Public Participation Policy itself. *Id.* at ¶ 30. Instead, Ms. Linker sent the document that authorizes the Board to develop and implement a public participation policy, but it does not contain the actual public participation policy. *Id.*

Lauren Linker was present at the April 2024 Board meeting but did not give Mr. Campbell a copy of the Policy when he requested it. *Id.* at ¶ 28.

## **LEGAL STANDARD**

Defendants failed to include a "Legal Standard" section in their Motion to Dismiss. A plaintiff's burden is minimal when stating facts in a complaint to sufficiently support a claim, and a plaintiff only has to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff will survive a motion to dismiss if his complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court must accept as true all the factual allegations contained in a complaint, but it is not bound to accept legal conclusions. *Iqbal*, 556 U.S. at 678. Thus, "[w]hen there

5

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## ARGUMENT

I. **The Court Should Deny Defendants' Motion Because the Board Violated Mr. Campbell's First Amendment Right to Freedom of Speech and Petition.**

This Court should deny the Defendants' Motion because the facts alleged in Plaintiff's Complaint plausibly show that the Board violated his First Amendment rights to free speech and to petition the government.

County Board commission meetings are considered limited public forums. In a limited public forum, the government may impose reasonable restrictions on speech, but such restrictions "must not discriminate against speech on the basis of viewpoint," and "must be reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001) (quotation omitted); *accord Child Evangelism Fellowship v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067-68 (4th Cir. 2006). The First Amendment generally "forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).

Here, as alleged in the Complaint and applied to Mr. Campbell, the Board's Policy prohibiting individuals from saying the names of County employees is a content-based restriction that violates the First Amendment. The Policy identifies specific subject matter—the names of county employees—and prohibits statements that contain that subject. Because it is content based, the rule prohibiting comments about district staff

6

members must be reasonable in light of the purpose of the limited public forum. "[E]ven restrictions that pursue legitimate objectives can be unlawful if their enforcement cannot be 'guided by objective, workable standards.'" *Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1333 (11th Cir. 2024) (quoting *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018)). Such an "indeterminate prohibition" is ripe for abuse, especially when that prohibition has "received a virtually open-ended interpretation." *Id.* (cleaned up). Federal courts have determined a policy to be unreasonable if it fails to define "'key terms, lacks any official guidance, and vests too much discretion in those charged with its application.'" *Moms for Liberty*, 188 F.4th at 1332 (quoting *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1347 (11th Cir. 2024)). And at the "very least," the government "'must be able to articulate some sensible basis for distinguishing what may come in from what must stay out.'" *Moms for Liberty*, 188 F.4th at 1332 (quoting *Mansky*, 585 U.S. at 16). The Board's arbitrary Policy fails to identify *any* sensible basis for prohibiting the public from using names at Board meetings.

Such a "grant of unrestrained discretion to an official responsible for monitoring and regulating First Amendment activities is facially unconstitutional." *Moms for Liberty*, 118 F.4th at 1332 (quoting *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation*, 322 F.3d 1298, 1310 (11th Cir. 2003). Arbitrary enforcement typically ensues when a regulation lacks standards and guidance. *See Kolender v. Lawson*, 461 U.S. 352, 361 (1983) ("We conclude [that the statute] is unconstitutionally vague on its face because it

7

encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute.").

Here, the Policy prohibits "personal, ad hominem attacks" and "insults" toward "board members, county employees or members of the public." But the Policy does not include any definitions of these terms. The Policy also includes an "Enforcement" provision that gives the Board Chair (or the "presiding officer") power of enforcement.[1] The broad discretion given to the presiding officer becomes evident in practice. As alleged in the Complaint, the Board Chair seemed to interpret the Policy in an extremely broad manner, not even allowing mention of county employees, at least not when those employees were being evaluated critically by members of the public. ECF No. 1 at ¶ 18. Indeed, when Mr. Campbell began mentioning the names of county employees during his comment period, the Board Chair interrupted him and told him he could not name names of county employees. *Id.* at ¶ 20. The Board Chair then refused to give Mr. Campbell a copy of the Policy and had him escorted out of the meeting by deputies. *Id.* at ¶¶ 21, 23. Simply using the names of county employees as Mr. Campbell did does not constitute "personal, ad hominem attacks" or "insults." Likewise, being critical of county employees does not constitute "personal, ad hominem attacks" or "insults."

What's more, "[r]estrictions that bar offensive or otherwise unwelcome speech are impermissible, regardless of the forum in which the government seeks to impose them."

---

[1] Section VII of the Public Participation Policy states: "The Presiding Officer is responsible for enforcement of this policy."

*Moms for Liberty*, 118 F.4th at 1334. Such a restriction may appear neutral. However, "'[g]iving offense is a viewpoint.'" *Id.* (quoting *Matal v. Tam*, 582 U.S. 218, 243, (2017) (plurality opinion)). When only positive or neutral comments are allowed, the benefit of open comment becomes lost. *See Moms for Liberty*, 118 F.4th at 1334. As the Eleventh Circuit has recognized, if a member of the public has a grievance with someone, but is unable to mention that someone's name, it is incredibly challenging to "adequately explain the problem." *Id.* at 1337.

      The Supreme Court has "firmly settled" that "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York*, 394 U.S. 576, 592 (1969); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989). Even "hurtful" speech is protected for the sake of promoting public debate. *Snyder v. Phelps*, 562 U.S. 443, 461 (2011). As the Board has demonstrated, the government is ill-equipped to determine what is offensive or not. *Moms for Liberty*, 118 F.4th at 1335 (citing *Cohen v. California*, 403 U.S. 15, 25 (1971)).

      Moreover, the cases cited by Defendants are factually distinct from the case before this Court. In *Davison v. Rose*, the plaintiff threatened violence upon the Board members and the public. 19 F.4th 626, 631 (4th Cir. 2021). Specifically, the plaintiff publicly made allusions to *American Sniper*, used the terms "shotgun" and "be prepared" in reference to a public meeting, referred to a public school as a "target rich environment," used a quote that included the mention of a "hand grenade," made references to public officials' children, and "made a reference to public officials meeting their creator." *Id.*

But limited public forums are not free reign for censorship; public bodies "'must not discriminate against speech on the basis of viewpoint,' and any restriction 'must be reasonable in light of the purpose served by the forum.'" *Child Evangelism Fellowship*, 470 F.3d at 1067-68 (quoting *Good News Club*, 533 U.S. at 106-07).

Applying these principles in *Bach v. School Board of Virginia Beach*, the court held that a policy that prohibits any attacks or accusations regarding the honesty, character, integrity or other personal attributes of an individual was an unconstitutional prior restraint on speech. 139 F. Supp. 2d 733, 743-44 (E.D. Va. 2001). The court recognized such a restriction deterred individuals from speaking out on issues of public importance.

*Steinburg v. Chesterfield* did not overturn *Bach* but rather clarified its scope. 527 F.3d 377 (4th Cir. 2008). Specifically, *Steinburg* noted that "personal attacks" are likely irrelevant "*unless*, of course, the topic legitimately at issue is the person being attacked, such as his qualifications for an office or his conduct." *Id.* at 387 (emphasis added). In other words, members of the public may be restricted from bashing a public official for the sake of bashing, but they may *not* be prohibited from commenting on aspects relevant to that public official's job. Issues of corruption are germane to a discussion of a public official and public programs. If the public cannot discuss possible corruption, that effectively chills speech and inhibits the "free flow of ideas and opinions on matters of public interest and concern" that lies at "the heart of the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U. S. 46, 50 (1988).

Thus, accepting the allegations of his Complaint as true, as the Court must at this stage, Plaintiff has stated a viable claim that the Board's enforcement of its "Public Participation Policy" violated his First Amendment right to freedom of speech and right to petition the government.

II. **The Court Should Deny Defendants' Motion Because the Board Effectively Banned Mr. Campbell from Board Meetings for 90 Days, Which Is a Prior Restraint in Violation of the First Amendment.**

Defendants' Motion also must fail because the facts alleged in Plaintiff's Complaint plausibly allege that the Board's banishment of Mr. Campbell from public meetings was a prior restraint in violation of his First Amendment rights.

Defendants claim that "the Complaint fails to allege that anyone actually communicated to Mr. Campbell that he was banned." ECF No. 8, p. 3. Defendants are simply wrong. In fact, the Complaint alleges that the Board announced the ban to those in attendance at the meeting that Mr. Campbell attended. Indeed, the Defendants' improper recitation of facts leaves out the critical moment when the Board Chair informed those present that any other violators of the rule would be banned from Board meetings for 90 days. ECF No. 1 ¶ 18. Specifically, Chairman Morris stated, "If it happens again, we will ask the Deputy to remove you from the chambers and you will be banned from public comments for 90 days." *Id.* When a deputy escorted Mr. Campbell out of the chambers, it is plausible, and quite certain given the Chairman's previous statement, that he was banned from public comments for 90 days. Mr. Campbell acted reasonably in taking a

11

public official at his word, and the facts in the Complaint plausibly show that the Board's Chairman banned him from public comments for 90 days.

This is especially true given the "Enforcement" provision of the Policy.[2] Enforcement, according to the Policy, may be carried out through a warning, temporarily prohibiting the person from "presenting to the Board" and "directing the person to leave a meeting." Additionally, the "Presiding Officer may request the assistance of law enforcement officers to enforce this policy." If someone does not leave the meeting when the presiding officer directs them to, that person is "guilty of a Class 2 misdemeanor." Mr. Campbell had no reason to doubt Chairman Morris's threat—as enforcer of the Policy—that violators would be banned from comment for 90 days.

Defendants claim that Mr. Campbell was "asked to leave only so that he could review the Policy, which he requested to see." ECF No. 8 p. 9. But the Complaint shows that Mr. Campbell was never given a copy of the Policy. ECF No. 1 ¶ 24. Instead, the Complaint shows that he was escorted out of the meeting by a deputy, just as Chairman Morris had publicly threatened. It's implausible that the Board commanded law enforcement to escort Mr. Campbell out of the public meeting to "review the Policy" he was never given. And this Court must construe the facts alleged in the Complaint and all reasonable inferences in the light most favorable to Mr. Campbell at this stage of the proceedings.

---

[2] Section VII of the Public Participation Policy states: "The Presiding Officer is responsible for enforcement of this policy."

Defendants also claim that "even if [Mr. Campbell] were banned, it would be entirely appropriate to temporarily ban him for violations of the Policy if he persisted in refusing to comply with the constitutional Policy." ECF No. 8, at 9. But Defendants provide no evidence, citations, or any other support for this drastic, baseless conclusion, which contradicts the facts alleged in Plaintiff's Complaint.

The Board Chairman's preemptive restriction on Mr. Campbell's speech violates Plaintiff's First Amendment right to free speech and is an unconstitutional prior restraint. Prior restraint is "a regulation of expression aimed at suppressing speech before it is uttered" and "bear[s] a heavy presumption of unconstitutionality." *Burch v. Barker*, 861 F.2d 1149, 1154 (9th Cir. 1988) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). Despite this heavy presumption, Defendants apparently believe they can improperly allege facts that contradict those actually alleged in the Complaint, without any justification, that a ban is "entirely appropriate." Defendants' belief is implausible. And the Complaint shows that Mr. Campbell did not engage in threatening or violent behavior, nor were his words threatening or violent. He simply mentioned the name of a public official in an attempt to point out what he believed to be corruption in the government. When governments ban members of the public without justification before they speak, it is an improper prior restraint, and the system is even more ripe for corruption.

13

Case 1:24-cv-00975-WO-JLW    Document 9    Filed 02/13/25    Page 13 of 15

Thus, accepting the allegations of his Complaint as true, as the Court must at this stage, Mr. Campbell has stated a viable claim that Defendants violated his First Amendment rights by imposing a prior restraint on his speech.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion.

This the 13th day of February, 2025.

/s/ Troy D. Shelton
Troy D. Shelton
N.C. State Bar No. 48070
tshelton@dowlingfirm.com
DOWLING PLLC
3801 Lake Boone Trail, Suite 260
Raleigh, North Carolina 27607
Telephone: (919) 529-3351

M.E. Buck Dougherty III*
Noelle Daniel*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd. Suite 1-250
Austin, TX 78735
(512) 481-4400 - telephone
bdougherty@libertyjusticecenter.org
ndaniel@libertyjusticecenter.org

*Pro hac vice admission forthcoming*

*Counsel for Plaintiff Mr. Campbell*

## CERTIFICATE OF WORD COUNT

Undersigned counsel certifies that this brief complies with the word-count limit in Local Rule 7.3(d).

/s/ Troy D. Shelton<br>
Troy D. Shelton