IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**JAMES CAMPBELL,**

      Plaintiff,

v.                                          **CIV. ACT. NO. 1:24-CV-975**
                                                      Judge Bailey

**CABARRUS COUNTY BOARD OF
COMMISSIONERS; and STEVE MORRIS,**
in his official capacity as Board Chairman,

      Defendants.

## ORDER

Pending before this Court is defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 7] and accompanying Brief in Support [Doc. 8], filed January 23, 2025. Plaintiff filed a Response [Doc. 9] on February 13, 2025. Defendants' Reply [Doc. 10] was filed February 27, 2025. This matter is ripe for adjudication. For the reasons contained herein, defendants' Motion [**Doc. 7**] will be granted in part and denied in part.

## I. BACKGROUND

This matter arises out of plaintiff's participation at an April 15, 2024 meeting of the Cabarrus County, North Carolina Board of Commissioners ("the Board"). [Doc. 1]. Pertinent events at the meeting are detailed herein.

At the onset of the public comment period of the meeting, a man ("Mr. Anderson") addressed the Board regarding the removal of his daughter from his home and issues with care provided by the Cabarrus County Department of Social Services ("DSS") for his

mentally ill sister. [Id. at ¶ 17; Video].[1]  In the course of Mr. Anderson's comments, he named two (2) individuals associated with DSS, characterizing one as having a "conflict of interest" and the other as "neglecting care" for his sister. [Id.; Video].  Commissioner Kenneth Wortman interrupted Mr. Anderson, saying "[w]e're not supposed to be naming names, are we not?" [Id.; Video].  Mr. Anderson finished his comments, and then Commissioner Wortman asked defendant Morris to "do something" about people "naming names." [Id.; Video].  Defendant Morris then said the following:

> Uh, you are correct.  Um, we, our policy states that names for employee, county employees, are not to be named.  Uh, you have repeatedly, um, disregarded those rules.  Uh, we've discussed them many times.  If, if it happens again, we will ask the deputy to remove you from the chambers and you will be banned from public comments for ninety days.  If you follow the rules, then, then you will be fine, but you have to follow the rules.  Is that appropriate, Commissioners?

[Id. at ¶ 18; Video].

After two (2) more speakers addressed the Board, it was plaintiff's turn to speak. [Video].  Plaintiff began voicing concerns regarding the removal of his children from his

---

[1] Throughout this Order, the Court cites to a video from the April 15, 2024 meeting of the Cabarrus County Board of Commissioners found at www.youtube.com/live/udJ12SQaCe4, such video being incorporated into plaintiff's Complaint through the inclusion of a link to the video in the Complaint.  See [Doc. 1 at 4, fn.1].  The Court will cite to this video throughout this Order using the term "Video."  The Video may be considered in relation to defendants' Motion without converting the Motion to one for summary judgment.  ***Wong v. Guilford Cnty. Sheriff Dep't***, 2024 WL 85548 (M.D. N.C. Jan. 8, 2024) (Auld, M.J.).  Video content referenced herein begins at the 44:23 mark and ends at the 1:37:15 mark.

home by the Cabarrus County Department of Human Services and/or the DSS. [Video]. In the course of plaintiff's comments, he characterized one (1) individual associated with DSS as "violating federal law" in the course of plaintiff's child removal case. [Video]. Plaintiff went on to name two (2) additional individuals, and he characterized one (1) of them as a "corrupt DSS worker." [Video].

After suggesting DSS get "in-house counsel," Commissioner Wortman interrupted plaintiff and told him he was not supposed to be "naming names" pursuant to the Board's Policy ("the Policy"). [Id. at ¶ 20; Video]. Plaintiff requested a copy of the Policy, and was told by defendant Morris a copy "could easily" be given to him. [Id. at ¶ 21; Video]. Plaintiff was then told he could "continue his comments, but [he] cannot call out names of county employees." [Video]. Plaintiff responded by saying "until I see [unintelligible] [P]olicy, that I am privy to, I'm gonna continue to call out names." [Id.; Video]. At that point, defendant Morris asked plaintiff to leave the meeting chambers "so [he] [could] read that [P]olicy." [Id. at ¶ 22; Video]. Plaintiff confirmed defendant Morris asked him to leave, and defendant Morris said "[y]es sir." [Id.; Video]. Two (2) sheriff's deputies then escorted plaintiff from the meeting chambers. [Id. at ¶ 23; Video]. Plaintiff never received a copy of the Policy, and understood he was banned from attending Board meetings for ninety (90) days. [Id. at ¶¶ 24; 31].

Plaintiff brings two (2) claims based upon the Policy: (1) violation of the First Amendment right to freedom of speech and (2) violation of the First Amendment right to petition. [Id. at ¶¶ 33–47]. Plaintiff also brings the same claims arising out of his ban from attending Board meetings. [Id. at ¶¶ 48–53]. Plaintiff requests a preliminary and permanent injunction be issued prohibiting defendants from enforcing the Policy at Board

3

meetings, nominal damages arising out of the violations of his First Amendment rights, and an attorneys' fees award pursuant to 42 U.S.C. § 1988. [Id. at 14].

## II. LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995) (*cert. granted*, *Anheuser-Busch, Inc. v. Schmoke*, 517 U.S. 1206 (1996)). In *Twombly*, the Supreme Court noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 Fed. App'x. 348, 352

4

(4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 Fed. App'x. 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. ***Id***. at 396–97.

## III. DISCUSSION

As presented in defendants' Brief, their Motion presents two (2) questions:

1. Does the Policy violate [plaintiff's] First Amendment rights?

2. Did the Board ban [plaintiff] from exercising his First Amendment rights?

[Doc. 8 at 5]. The Court shall discuss each issue in turn; however, the Court will first present the policy at issue.

### A. The Policy

The Policy is titled Public Participation Policy and states in pertinent part:

Members of the public must maintain the civility, decorum and respect for the functioning and dignity of the Board of Commissioners. Speakers must be respectful and observe proper decorum in their statements by refraining from vulgarity, obscenities, profanity, speaking in a tone or manner that threatens disruption, or other like breaches of respect.

As part of this requirement, speakers may not utter personal, *ad hominem* attacks towards board members, county employees or members of the public. Directing insults at individuals, rather than discussing substantive concerns of public interest regarding a person's conduct or qualifications,

5

threatens the dignity and good order of meetings. Such comments are likely irrelevant and almost inevitably lead to a responsive defense or counterattack and thus to argumentation that has the real potential to disrupt the orderly conduct of the meeting.

. . .

The Presiding Officer is responsible for enforcement of this policy. The Presiding Officer may do so, where appropriate, by warning a person that they are violating this policy, temporarily prohibiting the person from presenting to the Board, or directing the person to leave a meeting. The Presiding Officer may request the assistance of law enforcement officers to enforce this policy.

[Doc. 8-1].

### B. Freedom of Speech and Freedom to Petition Claims Relative to the Policy

Defendants contend they did not violate plaintiff's First Amendment freedom of speech and freedom to petition rights. [Doc. 8 at 6–8]. Specifically, defendants contend the Policy is a valid restriction of speech, as it is a viewpoint neutral policy prohibiting personal attacks in a limited public forum. [Id. at 8]. In support, defendants cite *Davison v. Rose*, 19 F.4th 626 (4th Cir. 2021) and *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377 (4th Cir. 2008). [Id. at 7–8]. Both *Davison* and *Steinburg* dealt with policies prohibiting personal attacks in limited public forums, and both times the United States Court of Appeals for the Fourth Circuit upheld the policies. 19 F.4th at 635, 527 F.3d at 387.

6

Plaintiff contends the Policy is an improper "content-based restriction" in that it "identifies specific subject matter . . . and prohibits statements that contain that subject[]", such subject matter being county employee names. [Doc. 9 at 6]. Plaintiff additionally argues the Policy's language leads to arbitrary enforcement in that it: (1) "fails to identify *any* sensible basis for prohibiting the public from using names at Board meetings[;]" (2) fails to define "personal ad hominem attacks" and "insults[;]" and (3) leads to broad enforcement by the Presiding Officer. [Id. at 7–8] (emphasis in original). As to the last point, plaintiff points to defendant Morris's description of the policy as not allowing county employees to be named as opposed to the policy prohibiting personal attacks against county employees as evidence of broad enforcement. [Id. at 8]. Plaintiff further argues **Steinburg** can be read to allow attacks relevant to a public official's job. [Id. at 10].

In their Reply, defendants argue the binding precedent of **Davison** and **Steinburg** requires a finding the Policy is facially constitutional. [Doc. 10 at 3]. Defendants further argue plaintiff's comments at the Board meeting clearly amount to personal attacks which were not germane to the discussion. [Id.].

A First Amendment claim such as the one presented in the instant matter proceeds in three (3) steps. "First, the Court determines whether the speech [was] protected by the First Amendment[.]" **Davison**, 19 F.4th at 635 (internal citation and quotation marks omitted). "Next, the Court must identify the nature of the forum in which the speaker spoke." *Id.* (internal citation and quotation marks omitted). "Finally, the Court must ask whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.* (internal citation and quotation marks omitted).

7

Case 1:24-cv-00975-JPB-JLW    Document 12    Filed 03/12/25    Page 7 of 11

The First Amendment right of freedom to petition "is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *Bernstein v. Sims*, 643 F.Supp.3d 578, 587 (E.D. N.C. Dec. 1, 2022) (Boyle, J.) (internal citation and quotation marks omitted). "The right to petition the government may be limited, so long as it is for a legitimate purpose." *Id*. (internal citation omitted).

Here, defendants do not contest the notion that plaintiff was engaging in protected speech. Further, the parties agree county board meetings are limited public forums. [Doc. 8 at 6; Doc. 9 at 6]. "Government entities may create a limited public forum in a specified location for a limited use, so long as they do not impose those limits in a manner that discriminates based on the speaker's viewpoint." *Davison*, 19 F.4th at 635 (internal citation omitted). The State "may be justified in reserving its forum for certain groups or for the discussion of certain topics[,]" however, "[e]ven in a limited public forum . . . the government must not discriminate against speech on the basis of viewpoint and any restriction must be reasonable in light of the purpose served by the forum." *Id*. (internal citations and quotation marks omitted).

In reviewing the language of the Policy, there can be no question the language is facially valid in light of both *Davison* and *Steinburg*. The Policy prohibits "personal, *ad hominem* attacks," and the Fourth Circuit has ruled such a prohibition "further[s] the forum's purpose of conducting good business." 527 F.3d at 387. This Court is concerned at this stage, however, about arbitrary enforcement of the Policy. Specifically, the Video depicts a speaker (who spoke immediately after plaintiff) criticizing a Board member, going so far

8

as to call the Board member "two-face." [Video]. No Board member reacts to this comment, and no one references any violation of the Policy. [Video]. "[A] government regulation that allows arbitrary application . . . has the potential for becoming a means of suppressing a particular point of view." **Child Evangelism Fellowship of Md, Inc. v. Montgomery Cnty. Pub. Sch.**, 457 F.3d 376, 386 (4th Cir. 2006) (internal citation and quotation marks omitted). "[T[here is broad agreement that, even in limited public and nonpublic forums, investing governmental officials with boundless discretion over access to the forum violates the First Amendment." *Id.* (internal citations omitted). While the Policy's language may pass muster, the enforcement of the Policy does not at this stage.

Further contributing to this Court's hesitation is the way the Policy was articulated by defendant Morris in the Video. The Policy prohibits "personal, *ad hominem* attacks[.]" [Doc. 8-1]. Defendant Morris articulated the Policy as prohibiting the "naming" of county employees. [Doc. 1 at ¶ 18; Video]. There is a difference between using the name of an employee versus personally attacking an employee. As defendant Morris is the individual charged with enforcing the Policy, it gives this Court pause that he would articulate the Policy in the manner he did at the meeting. Defendant Morris's articulation of the Policy supports the position that the broad discretion awarded to the Presiding Officer may result in arbitrary enforcement.

There is also a question at this stage whether plaintiff's remarks were in fact "bashing for the sake of bashing" or if they were related to the individuals' employment. "[A]s an insult directed at a person and not speech directed at substantive ideas or procedures at issue, a personal attack is surely irrelevant – unless, of course, the topic

9

legitimately at issue is the person being attacked, such as his qualifications for an office or his conduct." 527 F.3d at 387. This Court agrees with plaintiff that **Steinburg** can be read to permit comments related to a public official's job, even if the comments come in the form of a personal attack. As plaintiff's comments pertained at least, in part, to DSS personnel and their jobs, this Court cannot grant defendants' Motion on these grounds. Further, to the extent defendants argue plaintiff was discussing things not at issue in the meeting, this Court notes the Board did discuss child protection issues in the course of the meeting. [Video]. For these reasons, the Motion [**Doc. 7**] is **DENIED** as to plaintiff's claims arising out of the Policy.

### C. Freedom of Speech and Freedom to Petition Claims Relative to the Ban

Defendants argue plaintiff was never actually banned from attending Board meetings, and, as a result, his claims brought in Count III of the Complaint must be dismissed. [Doc. 8 at 9]. Specifically, defendants argue plaintiff's Complaint does not allege he was banned, and plaintiff was only asked to leave so he could review the Policy. [Id.]. Plaintiff contends defendant Morris's comments regarding a 90-day ban for violators of the Policy, his removal from the chambers, and the "Enforcement" provision of the Policy amount to an effective ban in violation of the First Amendment. [Doc. 9 at 11–12]. Plaintiff further argues that, since he was never given a copy of the Policy, "[i]t's implausible that the Board commanded law enforcement to escort [plaintiff] out of the public meeting to 'review the Policy' he was never given." [Id. at 12]. In Reply, defendants argue defendant Morris's comments were directed solely at Mr. Anderson and there remains no evidence plaintiff was actually banned from attending Board meetings. [Doc. 10 at 4].

Upon review of the Video and the allegations of the Complaint, this Court agrees with defendants. Plaintiff's allegations do not support the notion he was actually banned from attending Board meetings; rather, plaintiff pleads he "understood" he was banned. [Doc. 1 at ¶ 31]. Plaintiff does not allege he was banned by the Board, nor does he plead any facts supportive of the notion he was actually banned from meetings. Accordingly, defendant's Motion [**Doc. 7**] is **GRANTED** as to the claims arising from the ban.

### IV. CONCLUSION

For the reasons as stated herein, defendants' Motion [**Doc. 7**] is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** as to Counts I and II of the Complaint. The Motion is **GRANTED** as to Count III of the Complaint. The claims in Count III are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: March 12, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE